IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

CHARLES STANTON SULLIVAN, JR.,
individually, as heir and as personal
representative of Ruth S. Sullivan,
deceased,

     Plaintiff,

v.

THE CITY OF DADEVILLE, et al.,[1]

     Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. 3:22-cv-653-ECM-JTA
(WO)

## <u>ORDER AND RECOMMENDATION OF THE MAGISTRATE JUDGE</u>

Before the court are the following motions: the Motion to Dismiss or, in the Alternative, Motion for Summary Judgment filed by Defendants Brownie Caldwell, Johnathan Floyd, Frank Goodman, Teneeshia Goodman-Johnson, Darryl Heard, and Tony Wolfe (Doc. No. 65) and the Motion to Dismiss or, in the Alternative, Motion for Summary Judgment and Joinder in Brief filed by Defendant Terry Greer (Doc. No. 68). Also before the court is the Motion to Require Plaintiff to Replead Due Process Claim, or in the Alternative, Motion for More Definite Statement filed by Defendants Peter Golden, Mitzy Hidding, and The City of Dadeville. (Doc. No. 92.)

---

[1] Defendant Johnathan Floyd's name was incorrectly spelled "Johnatan Floyd" in the caption of Plaintiff's Amended Complaint. (Doc. No. 40 at 1.) Accordingly, the Clerk of the Court is DIRECTED to amend the docket sheet to reflect that this Defendant's name is spelled "Johnathan Floyd."

For the reasons stated below, the court will order that the Motion to Require Plaintiff to Replead Due Process Claim (Doc. No. 92) be GRANTED and the Alternative Motion for More Definite Statement (Doc. No. 92) be GRANTED. Plaintiff will be ordered to file an amended pleading that is limited in scope to the remaining claims and defendants, that complies with the Rules of Civil Procedure, and that meets the substantive and formatting instructions in this Order and Recommendation (including the page limit and deadline).

Further, the undersigned recommends that the Motion to Dismiss (Doc. No. 65) be GRANTED IN PART and DENIED IN PART, the Motion for Summary Judgment (Doc. No. 65) be DENIED, the Motion to Dismiss (Doc. No. 68) be GRANTED IN PART and DENIED IN PART, and the Motion for Summary Judgment (Doc. No. 68) be DENIED.

## I.      JURISDICTION AND VENUE

This court exercises subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331. The parties do not contest personal jurisdiction or venue, and the Court finds sufficient allegations to support both in the Middle District of Alabama, Eastern Division.

## II.      STANDARDS OF REVIEW

A.      Motion to Dismiss

When evaluating a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Resnick v. AvMed*, *Inc*., 693 F.3d 1317, 1321–22 (11th Cir. 2012). To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

2

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

Because it is not drafted by an attorney, the complaint of a *pro se* plaintiff must be liberally construed. *See Douglas v. Yates*, 535 F.3d 1316, 1320 (11th Cir. 2008). Nevertheless, the factual allegations in the complaint must state a plausible claim for relief, *Ashcroft*, 556 U.S. at 678, and the court is not "'bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The factual allegations need not be detailed but "must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (applying *Twombly* to a *pro se* complaint). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. 662, 678; *see also Twombly*, 550 U.S. at 555 (holding that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

B.     Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Palm v. U.S.*, 904 F. Supp. 1312,

1314 (M.D. Ala. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324. A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita v. Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson*, 477 U.S. at 255. After the nonmoving party has responded to the motion for summary judgment, the Court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e). As stated by the Court in

4

*Celotex*, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial," the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322.

C.     Motion for More Definite Statement

Federal Rule of Civil Procedure 12(e) governs motions for a more definite statement. Such a motion "must be made before filing a responsive pleading and must point out the defects complained of and the details desired." Fed. R. Civ. P. 12(e). "Rule 12(e) sets out a very high standard for determining whether to grant a motion for a more definite statement: the complaint must be 'so vague or ambiguous that the party cannot reasonably prepare a response.'" *Tolbert v. High Noon Prods*., *LLC*, No. 4:18-CV-00680-KOB, 2019 WL 127363, at *3 (N.D. Ala. Jan. 8, 2019) (Bowdre, J.) (quoting Fed. R. Civ. P. 12(e)). A party "may not use a Rule 12(e) motion to circumvent the short and plain statement requirement," or to prematurely "obtain information that can otherwise be obtained in discovery," *Id*. (citing *Herman v. Continental Grain Co*., 80 F. Supp. 2d 1290, 1297 (M.D. Ala. 2000)). "Nevertheless, when a plaintiff fails to identify key facts, unduly increasing the burden of understanding the factual allegations, district courts may grant a 12(e) motion for a more definite statement. *Id*. (citing *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1324 (11th Cir. 2015)).

D.     The Court's Obligation to *Sua Sponte* Order Amendment in Cases of Shotgun Pleading

"Complaints that violate either Rule 8(a)(2) or Rule 10(b) [of the Federal Rules of Civil Procedure], or both, are often disparagingly referred to as 'shotgun pleadings.'"

*Weiland*, 792 F.3d at 1320 (11th Cir. 2015). "All shotgun pleadings share two characteristics in common." *Dorman v. Palm Beach Cnty.*, No. 19-81538-CIV, 2020 WL 2078527, at *1 (S.D. Fla. Apr. 30, 2020). First, shotgun complaints "'fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.'" *Id*. (quoting *Weiland*, 792 F.3d at 1323). Second, shotgun complaints "'waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts.'" *Id*. (quoting *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018)). As the court has previously explained to Plaintiff, the Eleventh Circuit has defined shotgun pleadings as follows:

> Though the groupings cannot be too finely drawn, we have identified four rough types or categories of shotgun pleadings. The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Weiland*, 792 F.3d at 1323 (footnotes omitted).

"Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice."

*Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir. 1996). At the same time, "the court is obliged to *sua sponte* exercise its inherent duty and responsibility to manage its docket, ensure that the issues subject to litigation are clearly delineated, prevent extended and aimless discovery, protect the record from accumulating cumbersome and unnecessary mass, and efficiently allocate judicial resources." (Doc. No. 137 at 13.) That duty requires the court to *sua* sponte order repleader of a shotgun complaint where necessary to achieve those objectives, and where less drastic alternatives are unavailing.[2] (*Id*. at 12-14, 23.) *See Magluta v. Samples*, 256 F.3d 1282, 1285 (11th Cir. 2001) (directing the district court on remand to strike the shotgun complaint "and require a repleading of all claims in a complaint that respects the requirements" of the Federal Rules of Civil Procedure); *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc*., 162 F.3d 1290, 1333 (11th Cir. 1998) (emphasizing the court's "power and duty" to intervene *sua sponte* in cases of shotgun pleadings to narrow the issues and "prevent the case from proceeding beyond the pleadings until the issues are reasonably well defined"); *Reese v. Weidplas N. Am*., *LLC*, No. 3:18-cv-793-WKW-SRW, 2019 WL 13299344, at *3 (M.D. Ala. 2019) ("The district courts have the inherent authority to require plaintiffs to define the scope of their claims and, indeed, it is the courts' duty to do so at the earliest practicable

---

[2] Where a plaintiff fails to comply with an order to file an amended complaint to cure the shotgun pleading issues, the case may be dismissed with or without prejudice pursuant to Rule 41(b) of the Federal Rules of Civil Procedure and the court's inherent powers to ensure compliance with its orders. *See Sullivan v. Prattville Health & Rehab*., LLC, No. 3:22-CV-702-RAH-JTA, 2024 WL 2755683, at **10-11 (M.D. Ala. May 29, 2024) (Order and Recommendation of the Magistrate Judge) (collecting cases and recommending dismissal with prejudice for failure to comply with the court's prior orders to cure a shotgun complaint).

stages of litigation."); *Hatfield v. Cadence Bank*, No. 3:23-cv-202-RAH-JTA, September 8, 2023 Order (Doc. No. 24 at 3-4) (collecting cases and explaining the court's inherent power and duty to ensure that the pleadings are not "so deficient as to risk significantly inhibiting joinder of the issues, trial, and effective case management," even where the complaint is not subject to review under 28 U.S.C. § 1915(e)(2)(B)); *see also Anderson*, 77 F.3d at 367 n.5 (noting that, where defendants opted not to move for a more definite statement, "on examining [the] pleadings, the court, acting *sua sponte*, should have struck the plaintiff's complaint, and the defendants' answer, and instructed plaintiff's counsel to file a more definite statement" because the complaint so failed to comply with the rules of pleading that it prevented effective joinder and disposition of the relevant issues in the case).

## III.   FACTS[3]

In 2012, Plaintiff suffered a damaging stroke that left him unable to work because of memory problems, pain, seizures, sudden fatigue, and other medical issues. (Doc. No. 40-1 at 4.)

---

[3] The Amended Complaint is not verified. Except to the extent that they can be supported by the evidence attached to the Amended Complaint or evidence submitted on summary judgment, the factual allegations of the Amended Complaint are taken as true only for purposes of considering the motions to dismiss, not in considering the motions for summary judgment. Fed. R. Civ. P. 56(c); *Ashcroft*, 556 U.S. at 678. As for facts gleaned from the evidence presented on summary judgment, only undisputed facts are included in this statement of facts. Disputed facts from the evidence presented on summary judgment are construed in the light most favorable to Plaintiff and, to the extent relevant, will be addressed in the discussion portion of this Order and Recommendation.

Plaintiff's late mother, Ruth Sullivan, who passed away in 2021, owned a building in Dadeville, Alabama, where she had her law office. (*Id*. at 2, 3.) In 2016, while she was ill, the City of Dadeville informed Plaintiff that his mother's office needed cleaning because empty feed bags stored in a hallway posed a fire hazard. (*Id*. at 2.) Again in 2018, the then-chief of Dadeville police asked Plaintiff to move numerous empty feed bags lining the hall of the law office and to address weeds that were growing on the property. (*Id*. at 2-3.) Half the bags were removed, but Plaintiff did not address the weeds because he needed to prioritize his mother's care. (*Id*. at 3.)

After Ms. Sullivan passed away in May 2021, Plaintiff removed more bags and stacked the remaining bags in the office after tying them in bales. (*Id*.) Nevertheless, the City of Dadeville's code officer sent a letter requesting that the bags and weeds be addressed. (*Id*.) Plaintiff removed more bags and, with some limited success, killed weeds with weed-killer. (*Id*.) He also investigated a problem with the roof. (*Id*. at 3.)

By letter dated October 13, 2021, Dadeville's then-building inspector, J.D. Ayers, notified Plaintiff that the law office building was in violation of Dadeville's ordinances prohibiting overgrown weeds and unsafe buildings and structures, and that the property "needs to be cleaned up from debris and the structure made safe and secure from all existing hazards." (Doc. No. 40-2 at 28-29.) By letter dated November 24, 2021, Ayers advised Plaintiff that, within twenty-one days, he needed a written response stating Plaintiff's

intentions regarding building repairs.[4] (*Id*. at 30.) Ayers specified that "[t]here should be a starting date around January 10[, 2022] with a completion date within 90 days." (*Id*.)

In spring 2022, Peter Golden, Dadeville's newly appointed code enforcement officer, sent Plaintiff letters informing him of unspecified city code violations. (Doc. No. 40-1 at 3.) After some difficulty tracking down Golden, Plaintiff spoke to Golden in person to inform him of his following plans for the former law office building: use a different type of weed killer to kill the weeds, remove the bags, take down and re-lay the back brick wall (which used to be shared with an adjoining building that was torn down),[5] and repair the roof, in that order. (*Id*.) Shortly thereafter, Plaintiff removed all but a few bags and killed the weeds. (*Id*. at 3.) Once the weeds died, Plaintiff could see that the back wall of the building was damaged by large roots within the wall. (*Id*.) He made temporary repairs to the roof, which stopped the leak. (*Id*. at 4.) He obtained a contractor to supervise the wall and roof repair, but Golden refused to give Plaintiff a permit to proceed with the work. (*Id*. at 3.)

Golden also spoke with Plaintiff in person and on the phone regarding the violations. (Doc. No. 67-1 at 4-5, 36.) In a conversation on April 26, 2023, Golden invited Plaintiff to

---

[4] Ayers's letters referenced property at "243 West Cusseta St.," which is a different address than the one normally attributed to the building at issue in this lawsuit. It appears to be undisputed, however, that Ayers's letter was intended to concern the property in question.

[5] Plaintiff contends that Dadeville, which owned the building that was torn down, owns or partially owns the back wall that is now in disrepair. (Doc. No. 40-1 at 5.) He contends that Ms. Sullivan had an agreement with the City during demolition of the City's building that the City's portion of the walls would remain in order to keep Ms. Sullivan's building from falling apart. (*Id*. at 4-5.)

appear "before the City Council to discuss his intentions to repair the building and make it safe, but Plaintiff refused." (*Id*. at 5.)

On May 24, 2022, the Dadeville City Council held a meeting at which it was discussed whether to declare the building in violation of the nuisance ordinance. (Doc. No. 40-1 at 9-10; Doc. No. 67-1 at 41.) The City Council passed a resolution finding that the law office building was in violation of the nuisance ordinance because of weeds, debris, and other conditions. (Doc. No. 67-1 at 40-41.) The resolution also required Golden to provide the property owner with thirty days' written notice of a public hearing on the matter, to compile a list of contractors who could perform the necessary abatement work, and to post signs on the property. (*Id*.)

By certified letter dated June 13, 2022, Golden notified Plaintiff that the property "need[ed] to be cleaned up, weeds and grass cut, debris removed, and the integrity of the building made safe." (*Id*. at 46.) Enclosed in Golden's letter was a copy of the nuisance ordinance and a list of contractors capable of abating the nuisance. (*Id*.)  Golden's letter also notified Plaintiff that the city council would hold a hearing on the matter at 5:30 p.m. on July 26, 2022. (*Id*.)

On July 26, 2022, a council meeting was held during which Plaintiff was allowed to speak for five minutes regarding his plans for repairs to the law office building. (*Id*. at 50; Doc. No. 40-1 at 9.) He spoke not only about the state of the building and repairs, but also about the fact that his health issues impacted the speed at which he could make the repairs. (Doc. No. 40-1 at 9.) Plaintiff presented his plans for repairing the building and stated that the building should not be condemned. (*Id*. at 10.) Golden then spoke, claiming

11

that Plaintiff had done nothing toward repairing the building. (*Id*. at 9.) Other members of the community also spoke, alleging that the condition of the building was outrageous and complaining about the state of the law office building. (*Id*. at 9-10.) Golden was allowed to speak twice on the subject of the law office building, but Plaintiff was only allowed to speak once. (*Id*.) The council then voted to declare the law office building a nuisance, as well as an adjacent building,[6] and to hire an engineer to investigate the buildings at issue. (*Id*. at 10, 14; *see also* Doc. No. 67-1 at 53-54.)

By letter dated July 28, 2022, Golden notified Plaintiff that the City Council had declared the building to be unsafe. (Doc. No. 40-2 at 12.) He explained that the "next step" was for the city to place liens on the property and "a list of costs to fix or remove [the] structure w[ould] be placed for the public to see." (*Id*.) Golden attached a copy of the relevant ordinance so that Plaintiff could "find where the city is at this point with moving forward" under Section 1-63. (*Id*.) In relevant part, Section 1-63 provided that, "[a]fter the council passes the resolution finding the conditions of the property to be a nuisance and ordering its abatement, all employees and duly authorized agents of the city may enter upon private property for that purpose." (*Id*. at 35.) It also provided that the City Council, at its option, could authorize repairs by designated contractors and that "[t]hose persons so designated may enter upon private property for the purposes of abating or removing the nuisance." (*Id*.)  In addition, Section 1-63 of the relevant ordinance provided that "[a]ny property owner shall have the right" to make the structure safe or have it demolished "at

---

[6] Plaintiff contends that destruction of the adjacent building will damage the law office building. (Doc. No. 40-1 at 12.)

his ... own expense providing the approved repair or removal is done prior to the commencing of the work by the employees or agents of the city to do the same." (*Id*.)[7]

Three times, Plaintiff asked Golden for a permit to make the needed repairs. (Doc. No. 40-1 at 5.) The first time, Golden denied the permit saying it could not be issued to Plaintiff. (*Id*.) The second time, Golden denied the permit because Plaintiff was required to have a state licensed general contractor. (*Id*.) The third time, Golden denied the permit because he refused to approve the general contractor Plaintiff had chosen, stating that Plaintiff would need a structural engineer and a life safety engineer. (*Id*.)

By letter to Dadeville's Mayor, Frank Goodman, dated August 3, 2022, Plaintiff notified Dadeville that he planned to repair the law office building using his own labor. (Doc. No. 40-2 at 2.) He also informed Dadeville that he had "removed the sacks and bagged plastic from the office for the most part," that the "weeds on [the] wall are dead," and that, "[t]his week, I will repair the damaged roofing." (*Id*.) He further stated that "[t]here is no need for an investigation of the wall's foundation because the wall was pushed out by three or four roots that I showed you prior to the hearing." (*Id*.)

By letter dated August 9, 2022, Golden notified Plaintiff that he was in violation of the portion of Dadeville's nuisance ordinance that provides that Dadeville's employees and

---

[7] The quoted portion of the ordinance comes from a copy of Dadeville Municipal Ordinance 484 as amended on June 25, 2019. (Doc. No. 40-2 at 11.) This appears to have been the copy of the ordinance that was attached to the June 13, 2022 notice of public hearing Defendants provided Plaintiff, which Plaintiff subsequently submitted to the court. (*Id*. at 5.) Defendants have submitted an older version of Ordinance 484 dated November 12, 2013, which only allows property owners to abate "any weeds" at their own expense before the city takes action. (Doc. No. 67-1 at 19.) For purposes of this Recommendation, the undersigned will rely on the amended version of Ordinance 484 submitted by Plaintiff.

duly authorized agents had a right to enter the property to abate the nuisance, and which allows the owner to repair the property at their own expense, provided approved repairs begin before the city begins its own work to abate the nuisance. (Doc. No. 40-2 at 38.) The letter required Plaintiff to provide keys to the building within thirty days so that the city's agents could enter to abate the nuisance. (*Id*.)

In September 2022, Golden accused Plaintiff of planning to drag out the repair process, but Plaintiff contended he was merely waiting for completion of an imminent timber sale. (Doc. No. 40-1 at 5.) In addition, the lingering effects of Plaintiff's 2012 stroke and other health issues made it difficult for him to work quickly on repairing the building. (*Id*. at 4.)

On September 14, 2022, after Plaintiff proposed a certain structural engineer for the work, Golden informed Plaintiff that a structural engineer hired by the city would view the building that afternoon. (*Id*. at 5-6.) Plaintiff allowed Golden and the engineer entry to the building. (*Id*. at 6.) Later, Plaintiff was informed that Dadeville would not approve his chosen engineer to do the work. (*Id*.)

On October 25, 2022, Plaintiff was in the building "typing in his [m]other's office" and heard noises that sounded to him like construction at the front of the building. (*Id*. at 6.) Shortly thereafter, Plaintiff discovered that Mayor Goodman and Dadeville Chief of Police Johnathan Floyd had broken in through the back door, along with Defendant Chance Hunt and two unnamed contractors. (*Id*. at 6-7.)  They claimed to be in the building by permission of the town council to estimate the cost of repairs to the building. (*Id*. at 7.)

When they left, they did not repair the back doors that they had damaged while breaking in. (*Id*. at 8.) Plaintiff had to repair them himself. (*Id*.)

Plaintiff alleges that Mitzy Hidding, who moved to Dadeville from Atlanta with many plans to improve the town, is behind Dadeville's alleged determination to condemn his property. (*Id*. at 8.) According to Plaintiff, "[n]either Queen Elizabeth I nor II were a match for Ms. Hidding." (*Id.* at 11.) Hidding is a former manager for UPS, a parcel shipping company, and now attends Dadeville City Council meetings and participates in committees to control city planning and improvement, though she is not a member of the city council or a city official or employee. (*Id*. at 8, 12.) Plaintiff contends that Hidding is at the helm of a conspiracy to control building ownership matters in Dadeville (to her own financial benefit and to the benefit of other coconspirators), and that she holds important city planning meetings in her own event center and sways the town council and mayor to do her bidding. (*Id.* at 9.) Hidding owns property adjacent to the law office building, and she and her coconspirators have obtained other property at low condemnation prices by manipulating Dadeville's officials in the application of Dadeville's condemnation ordinances. (*Id*. at 11-12.) No fewer than thirty times, Hidding has asked Plaintiff to sell her the law office building, and Plaintiff has refused to sell just as many times. (*Id*. at 8.) Hidding has attempted to ply Plaintiff to sell by offering him food and drink. (*Id*. at 12.)

Plaintiff has continued to attempt to make repairs to the law office building, though Dadeville, through Golden and others, has been unhelpful and nonresponsive to his attempts to bring the building up to code. (*Id*.) Plaintiff fears that, at some point, Dadeville will try to force him to pay for unnecessary and expensive engineering work on the building

or place a lien on the building in an attempt to force him to sell the building or otherwise force a transfer of ownership. (*Id*. at 11-12.)

According to Plaintiff, the back wall of his building is in a state of disrepair not dissimilar to that of walls in some other buildings in Dadeville that have not been condemned. (*Id*.)

## IV.    PARTIES

Plaintiff brings suit in his individual capacity and in his capacity as personal representative of Ruth Sullivan's estate.[8] (Doc. No. 40 at 1.) Named Defendants are the City of Dadeville, Code Inspector Peter Golden, Mitzy Hidding, the Dadeville Police Department, Chance Hunt, Jonathan Floyd, Anne-Marie Jones,[9] Mayor Frank Goodman, and Councilpersons Brownie Caldwell, Teneeshia Goodman-Johnson, Terry Greer, Tony Wolfe, and Darryl Heard. (Doc. No. 40 at 1.) In a Memorandum Opinion and Order entered March 26, 2023, the court dismissed Defendant Dadeville Police Department from this action. (Doc. No. 91 at 11.)

Plaintiff also names "UNKNOWN INDIVIDUALS A, B, C, AND D" as Defendants. (Doc. No. 40 at 1.) These fictitious Defendants "are persons who from time to time control what goes on in Plaintiff's building through action against Plaintiff using [c]ity government as [a] tool to direct Plaintiff's actions and his ownership of the building." (Doc.

---

[8] From the pleadings, it is not possible to tell whether Plaintiff or the estate currently owns the law office building. Plaintiff states that he "assumes he now owns the building." (Doc. No. 40-1 at 6.)

[9] On Plaintiff's motion, by Order entered June 27, 2024, the claims against Defendant Jones were dismissed with prejudice, and she was dismissed from this action. (Docs. No. 56, 96, 98.)

No. 40 at 2.) The undersigned disregards these fictitious Defendants because "[a]s a general matter, fictitious-party pleading is not permitted in federal court."[10] *Muhammad v. Lee Cnty. Comm'n of Lee Cnty., Alabama*, No. 3:22-CV-713-ECM-KFP, 2023 WL 3243405, at *2 (M.D. Ala. Apr. 14, 2023) (quoting *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010)), *report and recommendation adopted sub nom. Muhammad v. Lee Cnty. Comm'n of Lee Cnty.*, No. 3:22-CV-713-ECM-KFP, 2023 WL 3239596 (M.D. Ala. May 3, 2023).

## V.    PLAINTIFF'S CLAIMS

Plaintiff filed this action on November 11, 2022. (Doc. No. 1) On August 1, 2023, he filed an amended complaint. (Doc. No. 40.) Generously construing the Amended Complaint in light of Plaintiff's *pro se* status, the undersigned concludes that Plaintiff brings the following causes of action.

First, Plaintiff asserts a cause of action pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C.A. § 12181 *et seq.*, and Section 501 of the Rehabilitation Act, 29 U.S.C. § 791. (Doc. No. 40-1 at 15.) He contends that, in making demands on him and on

---

[10] A narrow exception to the general rule exists where the description of the fictitious party is sufficient to point to a specific individual whose name may be revealed through targeted discovery. However, Plaintiff's description is not sufficient to meet the requirements of this narrow exception. *See Muhammad*, 2023 WL 3243405, at *2 (explaining the exception using examples); *Huffman v. Dunn*, No. 4:20-CV-01293-CLM, 2021 WL 2533024, at *9 (N.D. Ala. June 21, 2021) ("The cases discussing the exception seem to turn on whether the description of the fictitious defendant (a) allows the reader to point to a specific individual or (b) leaves the reader wondering which person(s) out of a group fits the bill. The former is allowed; the latter is not."). Plaintiff's description does not point to specific individuals or even to unknown individuals who committed specific wrongful acts; rather, he uses fictitious pleading as an attempted placeholder for others whose existence and wrongful acts are not yet known even to him, but who may later be discovered to have engaged in some as-yet-unspecified "action" using city government to interfere with his (or the estate's) ownership of the law office building.

his mother regarding the law office building, Defendant City of Dadeville unlawfully disregarded his disabilities related to his stroke and other ailments. (*Id.*)

Second, Plaintiff asserts a cause of action pursuant to 42 U.S.C § 1983 for violation of the Fifth and Fourteenth Amendment prohibitions on the taking of property without due process of law and for violation of constitutional guarantees of equal protection. (Doc. No. 40-1 at 15-16.) Plaintiff alleges that Defendants "City of Dadeville, Ms. Hidding, and co-conspirators" are using public money and the building condemnation process to take his private property for Hidding's private use. (*Id.*) He also alleges that Defendants are violating his due process rights by preventing him from having the building repaired at his own expense. (*Id.*)

Third, Plaintiff asserts a claim for violation of the Sherman Act, 15 U.S.C. § 1, which prohibits conspiracies to restrain trade. He asserts that Defendants violated the Sherman act by conspiring to deprive him of ownership of the law office building and of the right to repair it. (*Id.* at 16.)

Fourth, Plaintiff asserts a § 1983 claim for violation of the Fourth Amendment's prohibition on unreasonable searches and seizures, on grounds that Defendants' warrantless entries into the law office building constituted an unconstitutional search. (*Id.* at 16.)

Fifth, Plaintiff asserts a § 1983 Fourteenth Amendment procedural due process claim in which he contends that he

> has been prevented from voicing his defense in a hearing, has been falsely accused of doing nothing to repair his building contrary to the fact known to the accuser, has not been allowed to rebut witnesses, and was not allowed to

give a final argument allowed to City Code Enforcement Officer.
Condemnation followed shortly.

(*Id*. at 17.)

Finally, Plaintiff asserts two claims for "Deprivation of Federal Civil Rights"

pursuant to 18 U.S.C. §§ 241 and 242, statutes criminalizing deprivation of civil rights and

conspiracy to deprive another of civil rights. (*Id*. at 17-18.)

## VI.   DISCUSSION

A.   ADA and Rehabilitation Act Claims

In Plaintiff's first cause of action, he contends that, in making demands on him and

on his mother regarding the law office building, Defendant City of Dadeville[11] unlawfully

disregarded his disabilities related to his stroke and other ailments, which prevent him from

timely meeting those demands. (*Id*. at 15.) On March 26, 2024, the court granted the motion

of Defendants City of Dadeville, Golden, and Hidding (Doc. No. 43) for dismissal of the

ADA and Rehabilitation Act Claims as it pertained to them. (Doc. No. 91.)

Plaintiff did not assert this claim against Defendant Floyd, who is Dadeville's Police

Chief. Neither did Plaintiff expressly make this claim against Defendant (and Mayor)

Goodman or against those Defendants who serve as city council members (Caldwell,

Goodman-Johnson, Heard, Wolfe, or Greer) in their individual or official capacities. He

neither names these Defendants in this cause of action, nor alleges any personal

---

[11] The only Defendant specifically mentioned in Count One of the Amended Complaint is
Defendant City of Dadeville. (Doc. No. 40-1 at 15 ("Plaintiff alleges City of Dadeville has
disregarded his stroke and damages done thereby in demands made upon Plaintiff to today and his
[m]other while she was alive. In so doing, City of Dadeville has violated the [ADA and
Rehabilitation Act] and the State's required compliance with same Acts that flows to City.").)

involvement on any of their parts regarding the alleged ADA and Rehabilitation Act violations. Accordingly, the court concludes that Plaintiff did not assert this claim against these Defendants in their individual capacities.

To the extent Plaintiff's assertion of the claim against Defendant City of Dadeville could be construed as implicating any of these Defendants in their official capacities as representatives of the City of Dadeville, the claim is subject to dismissal as duplicative of the claim against Defendant City of Dadeville, which itself has already been dismissed for failure to state a claim upon which relief can be granted. *See Dejarnett v. Willis*, 976 F. Supp. 2d 1271, 1283 (M.D. Ala. 2013) (dismissing official capacity claims against a city's mayor and building inspector as duplicative of claim against the city); *Taylor v. Fulton Cnty.*, No. 1:08-CV-3242-RLV, 2010 WL 11598147, at *1 (N.D. Ga. Mar. 23, 2010) ("Since a suit against a person in his official capacity is the same as suing the governmental entity, *Kentucky v. Graham*, 473 U.S. 159 (1985), the court hereby dismisses as duplicative the plaintiff's claims against Sheriff Freeman in his official capacity."). (Doc. No. 88 at 15-19 (recommending dismissal of Plaintiff's ADA and Rehabilitation Act Claims as against Defendants City of Dadeville, Golden, and Hidding); Doc. No. 91 (dismissing Plaintiff's ADA and Rehabilitation Act claims as against Defendants City of Dadeville, Golden, and Hidding).)

Accordingly, Plaintiff's ADA and Rehabilitation Act claims are due to be dismissed as to Defendants Floyd, Goodman, Caldwell, Goodman-Johnson, Heard, Wolfe, and Greer.

B.      Plaintiff's § 1983 Claims - Equal Protection and Due Process Pertaining to Alleged Unconstitutional Taking by Preventing Plaintiff From Repairing his Building

In Plaintiff's second cause of action, he brings claims pursuant to 42 U.S.C § 1983 for violation of the Fifth and Fourteenth Amendment equal protection guarantees and for violation of the constitutional prohibition on the taking of property without due process of law. (Doc. No. 40-1 at 15-16.) Specifically, Plaintiff alleges that Defendants "City of Dadeville, Ms. Hidding, and co-conspirators" are using public money and the building condemnation process to take his private property for Hidding's private use. (*Id.*) He alleges that the City of Dadeville is violating his due process rights by preventing him from having the building repaired at his own expense, instead making expensive repairs that he cannot afford to repay in order to force the building into a short sale to Defendant Hidding. (*Id.*) In addition, Plaintiff alleges that "equal protection" is not "being followed. (*Id.* at 15.)

Plaintiff did not expressly assert these claims against Defendants Floyd, Goodman, Caldwell, Goodman-Johnson, Heard, Wolfe, or Greer in their individual or official capacities. He neither names these Defendants in this cause of action, nor alleges any personal involvement on any of their parts regarding the due process violations alleged in Plaintiff's second cause of action. However, for purposes of analyzing count two of the amended complaint, it is assumed that the defendant mayor and city council members[12] are implicitly included in the catchall designation of "co-conspirators" mentioned in Plaintiff's second cause of action.

---

[12] Plaintiff's second cause of action for unconstitutional taking of property without due process contains no allegations that would indicate it is premised on any acts or omissions of Defendant Floyd, either personally or in his capacity as police chief. Neither can this claim reasonably be interpreted as being asserted against Defendant Chance Hunt in his individual capacity.

The official capacity claims in count two of the amended complaint against these Defendants are subject to dismissal as duplicative of the claims against Defendant City of Dadeville. *See Dejarnett*, 976 F. Supp. 2d at 1283; *Taylor*, 2010 WL 11598147, at *1.

As for individual capacity claims, Plaintiff's second cause of action contains no specific allegations of the personal involvement of the mayor and city council members, but it is apparent that any claims against the defendant mayor and city council members in their individual capacities are premised on decisions they made in the course of carrying out their legislative roles for the city council – specifically, conducting city council meetings and voting on the resolution (Resolution 22-12 (Doc. No. 40-2 at 7-8)) that condemned Plaintiff's building as a nuisance, resulting in placement of a lien on the building and use of city money to repair the building in question. Defendants argue that the adoption of Resolution 22-12 is legislative in nature and, thus, that they are afforded legislative immunity for their actions in voting on the ordinance condemning the building.

It is true that absolute legislative immunity is afforded for acts that are "quintessentially legislative," such as acts that "reflect[] a discretionary, policymaking decision" concerning budgetary and nuisance abatement "priorities of the city and the services the city provides to its constituents." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998). Further, in Alabama, absolute legislative immunity is afforded to municipal officials in enacting legislation, without regard to the purity (or lack thereof) of their motives. *Id.* at 49, 55 (holding that, "local legislators are ... absolutely immune from suit under § 1983 for their legislative activities," including "voting for an ordinance" and (in the mayor's case) proposing a budget and signing an ordinance because those acts were

"integral to the legislative process"); *Baytree of Inverrary Realty Partners v. City of Lauderhill*, 873 F.2d 1407, 1409 (11th Cir. 1989) (holding that individual defendant city officials "have absolute immunity from any federal suit for damages if their challenged conduct furthers legislative duties"); *see also Peebles v. Mooresville Town Council*, 985 So. 2d 388, 395 (Ala. 2007) ("[E]ven if the Town officers did cast their votes in favor of the 2005 ordinance for improper reasons, this Court will neither seek to make that determination nor invalidate the ordinance [on grounds that] the motives of the Town officers were improper."); *Tutwiler Drug Co. v. City of Birmingham*, 418 So. 2d 102, 102 (Ala. 1982) (holding that "absolute immunity is a viable defense on behalf of the Mayor and members of the City Council of the City of Birmingham, in their individual capacities, in a claim based on negligence and abuse of discretion in the exercise of their respective legislative functions").

However, both Plaintiff and Defendants fail to mention or discuss the fact that the act of voting on an issue does not necessarily always qualify as a legislative function subject to legislative immunity. *Crymes v. DeKalb Cnty., Ga.*, 923 F.2d 1482, 1485 (11th Cir. 1991) (noting that, "'[a]lthough a local legislator may vote on an issue, that alone does not necessarily determine that he or she was acting in a legislative capacity.'" (quoting *Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 580 (9th Cir. 1984)); *Vestavia Plaza, LLC v. City of Vestavia Hills, Ala.*, No. 2:11-CV-4152-TMP, 2013 WL 4804196, at *20 (N.D. Ala. Sept. 9, 2013) (holding that a city council vote "is administrative or executive, not legislative" if "[i]t does not purport to set policy for the political jurisdiction, but simply

to apply pre-existing policy to a fact-specific circumstance"[13]). For example, the Eleventh Circuit has noted that a vote on the enforcement of a zoning ordinance as to a specific property may be administrative rather than legislative in nature where that decision is based on specific rather than general facts and the decision more likely impacts specific individuals rather than the general population. *Crymes*, 923 F.2d at 1486 (upholding the denial of a motion to dismiss on legislative immunity grounds claims against a county commissioner that were based on his vote to deny the plaintiff's application for a development permit because the vote was a decision "as to the application of policy to a specific party"); *Vestavia Plaza*, 2013 WL 4804196, at *19 ("Whether the act is one that affects a wide population or sets a general policy, as distinct from an act affecting a single person or a narrow group, generally is the key that differentiates a legislative act from an administrative or executive act not covered by the immunity." (citing *Yeldell v. Cooper Green Hospital, Inc.*, 956 F.2d 1056, 1062 (11th Cir. 1992)); *Ex parte Simpson*, 36 So. 3d 15, 29 (Ala. 2009) (holding that passage of an ordinance zoning certain property for

---

[13] Plaintiff almost seems to invoke this concept in his *pro se* response brief when he writes:

> True Council members are entitled to legislative immunity when they act in an unbiased legislative process. When, due to some dislike of Plaintiff and his Mother or to some societal prejudice, they decide to hark to Ms. Hidding[']s view and condemn a totally usable building, they depart from sovereign legislative immunity.
>
> Council and Mayor cannot randomly dictate which buildings will stand and which will fall when City is full of buildings in need of repair while being governed by poorly thought out ideas of Ms. Hidding....
>
> Regardless of plan, there is no need for abstention here. Law was not being followed.

(Doc. No. 84 at 63.)

agricultural use was a legislative function for which the defendant enjoyed legislative immunity, but not the denial of a business license application).

Here, Defendants do not adequately address whether the adoption of Resolution 22-12[14] was a legislative function adopting policy that affects the general public (which would be a legislative act subject to immunity) as opposed to administrative enforcement of the nuisance ordinance under a certain set of facts in a manner that affects only Plaintiff and his property (which might not be a legislative act).[15] Therefore, Defendants are not entitled to prevail on their legislative immunity argument at this time.

With respect to the substance of Plaintiff's equal protection claim in count two of his amended complaint, the court has already adopted a recommendation to dismiss that claim on the merits as to Defendants City of Dadeville, Golden, and Hidding. (Doc. No. 88 at 23-24; Doc. No. 91 at 6, 10-11). Defendants Goodman, Caldwell, Goodman-Johnson, Heard, Wolfe, and Greer raised the same substantive arguments in their dispositive motion as did Defendants City of Dadeville, Golden, and Hidding. (Doc. No. 42 at 34-35; Doc. No. 66 at 27-28.) In response to the dispositive motion of Defendants Goodman, Caldwell, Goodman-Johnson, Heard, Wolfe, and Greer, Plaintiff raised no new arguments that would undermine the rationale of the court's earlier substantive ruling on the equal protection

---

[14] Defendants do adequately argue that the passage of the nuisance ordinance itself was a legislative function. However, Plaintiff is not challenging the adoption of the nuisance ordinance as a whole, but the enforcement of it against his property in particular.

[15] The undersigned makes no findings at this time as to whether Resolution 22-12 was administrative or legislative in nature. However, the court notes that Resolution 22-12, on its face, condemns only Plaintiff's property as a nuisance under the nuisance ordinance and directs the commencement of abating the nuisance at that specific property. (Doc. No. 40-2 at 7-8.)

claim. Accordingly, for the same reasons the equal protection claim was previously dismissed against Defendants City of Dadeville, Golden, and Hidding, the equal protection claim is due to be dismissed on the merits against Defendants Goodman, Caldwell, Goodman-Johnson, Heard, Wolfe, and Greer, in their individual capacities.

Plaintiff also alleges that Defendants are conspiring to use the condemnation process to violate the due process protection against the unconstitutional taking of private property without just compensation. Specifically, Plaintiff alleges that Ms. Hidding and her "co-conspirators" in Dadeville's city government are effecting an unconstitutional taking by condemning the building and then preventing him from having the building repaired at his own expense. According to Plaintiff, they are instead making expensive repairs at the City's expense and placing a lien on the building that Plaintiff cannot afford to repay to force the building into a short sale to Defendant Hidding. (*Id.*) With respect to these due process claims, Defendants Goodman, Caldwell, Goodman-Johnson, Heard, Wolfe, and Greer raise substantially the same arguments as Defendants City of Dadeville, Golden, and Hidding made in their dispositive motion. (Doc. No. 42 at 27-33; Doc. No. 66 at 22-25.) The undersigned previously recommended denial of the dispositive motion of Defendants City of Dadeville, Golden, and Hidding as to "Plaintiff's due process claim alleging they are effectuating a taking of property by preventing him from repairing the building" on grounds that Defendants "failed to adequately address" that claim. (Doc. No. 88 at 22.) The undersigned noted, though, that, as pled, Plaintiff's due process claim was a "shotgun pleading" because it did not differentiate between procedural due process and substantive due process. (*Id.* at 20 n.10 (citing *Apothecary Dev. Corp. v. City of Marco Island, Fla.*,

No. 2:10-cv-392-FTM-36, 2011 WL 1071448, at *2 (M.D. Fla. Mar. 18, 2011)).) Recognizing that Defendants' failure to fully address the claim must be understood in the context of an attempt to respond to a shotgun pleading, the undersigned reserved its right to *sua sponte* order repleading of the claim and stated that "nothing in [the] Recommendation prevents Defendants from more fully fleshing out their arguments in opposition to this claim at an appropriate point in this litigation." (*Id*. at 22-23.)

Because it amounts to a shotgun pleading, Plaintiff's due process claim must be repleaded. As currently stated, Plaintiff's due process claim alleging Defendants are effectuating the unconstitutional taking of his property "risks hindering joinder of the issues, evaluation of the plaintiff's claims, and the fair and efficient management of the case." *Youngblood v. Bradford*, No. 2:22-CV-386-JTA, 2024 WL 1143501, at *3 (M.D. Ala. Mar. 15, 2024). Therefore, the court will now exercise its discretion to *sua sponte* order repleading of the due process takings clause claim as to Defendants City of Dadeville, Golden, and Hidding, and against Defendants Goodman, Caldwell, Goodman-Johnson, Heard, Wolfe, and Greer in their individual capacities. Defendants City of Dadeville, Golden, and Hidding have moved for such relief with respect to the claims against them (Doc. No. 92), and the claim is due to be repleaded to ensure that the claims can proceed to an efficient resolution. *See Youngblood*, 2024 WL 1143501, at *2 (M.D. Ala. Mar. 15, 2024) (collecting cases and explaining that "the Court has a separate obligation *to sua sponte* exercise its inherent powers to remedy a shotgun pleading where necessary to manage its docket to achieve the orderly disposition of [a] case" before it); *see also Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc*., 162 F.3d 1290, 1333 (11th Cir. 1998) ("As

we have previously stated, and state once again, district courts have the power and the duty to define the issues at the earliest stages of litigation" by *sua sponte* ordering repleader of shotgun claims, where necessary).

Because the undersigned will order Plaintiff to replead his takings clause claim in strict accordance with the instructions provided in this Order and Recommendation, the pending motion to dismiss that claim as to Defendants Goodman, Caldwell, Goodman-Johnson, Heard, Wolfe, and Greer in their individual capacities is due to be denied as moot without prejudice to raise the arguments therein in response to a second amended Complaint. *See Kelly v. Montgomery Hous. Auth*., No. 2:24-CV-166-MHT-JTA, 2024 WL 1837195, at *4 (M.D. Ala. Apr. 26, 2024) (recommending denial of a motion to dismiss without prejudice to raise the arguments therein in response to an amended pleading, and collecting cases in support of that recommendation). In all other respects, count two of Plaintiff's amended complaint is due to be dismissed without prejudice as to Defendants Goodman, Caldwell, Goodman-Johnson, Heard, Wolfe, and Greer in their official capacities, and with prejudice as to those Defendants in their individual capacities.

C.    Plaintiff's Sherman Act Claim

In Plaintiff's third cause of action, he asserts that Defendants "Hidding, the City of Dadeville as an entity and Council Members acting as Individuals with other Unknown individuals has conspired to flush out building owners using the City Codes as method of removal with building owners' rights being thrown to the wayside." (Doc. No. 40-1 at 16 (sic).) Plaintiff's third cause of action contains the assertion that the conspiracy to "flush"

Plaintiff from his building violated the Sherman Act, 15 U.S.C. § 1,[16] by using the city's nuisance law procedures to deprive him of ownership of the law office building and of his right to repair it. (Doc. No. 40-1 at 9, 16.)

At the outset, it should be noted that this count is not asserted against Defendant Floyd, who is not a city council member and who is not referenced in the third cause of action of the amended complaint. Alternatively, to the extent that the third cause of action's mention of "the City of Dadeville as an entity" could be construed to include Defendant Floyd in his official capacity as police chief, that claim is due to be dismissed as duplicative of the claims against the City of Dadeville. *See Dejarnett*, 976 F. Supp. 2d at 1283 (dismissing official capacity claims against the City of Wetumpka's mayor and building inspector as being "duplicative of the claims already asserted against the City" on grounds that "suing an individual in his or her official capacity is akin to pleading a cause of action against the government entity that employs the individual").

To the extent Plaintiff's third cause of action implicates Defendant Goodman[17] or the Defendant city council members in their official capacities, the claim is subject to

---

[16] The Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. The Sherman Act is enforceable in a private civil action via §§ 4 and 16 of the Clayton Act. 15 U.S.C. §§ 15, 26. *Wyndham Vacation Ownership, Inc. v. Montgomery L. Firm, LLC*, No. 8:19-CV-1895-CEH-CPT, 2021 WL 4948151, at *7 (M.D. Fla. Oct. 18, 2021) ("Private parties can enforce [§] 1 of the Sherman Act through [§§] 4 and 16 of the Clayton Act and recover damages and injunctive relief under those respective provisions."). To prevail in a private action to enforce the Sherman Act, Plaintiff must prove, *inter alia*, that Defendants violated antitrust laws. *Id.*

[17] It is unclear whether count three is intended to be asserted against Defendant Goodman, who, as mayor, does perform some city council functions and serves as the chief official of the City of Dadeville. For purposes of this analysis, the court will assume that Plaintiff intends for his third cause of action to be asserted against Defendant Goodman in his official capacity as mayor acting

dismissal as duplicative of Plaintiff's Sherman Act claim against Defendant City of Dadeville, which itself has already been dismissed for failure to state a claim upon which relief can be granted. *See Dejarnett*, 976 F. Supp. 2d at 1283 (dismissing official capacity claims against the City of Wetumpka's mayor and building inspector as being "duplicative of the claims already asserted against the City" on grounds that "suing an individual in his or her official capacity is akin to pleading a cause of action against the government entity that employs the individual").

To the extent Plaintiff's third cause of action is asserted against Defendant Goodman or the Defendant city council members in their individual capacities, it is due to be dismissed. As explained in Section VI.B. of this Order and Recommendation, Defendants Goodman, Caldwell, Goodman-Johnson, Heard, Wolfe, and Greer have failed to adequately address whether their alleged actions in enforcing the nuisance ordinance against Plaintiff's building or in voting on a resolution to condemn Plaintiff's building constitutes legislative action subject to legislative immunity. Accordingly, they are not entitled to prevail on their legislative immunity claim with respect to Plaintiff's Sherman Act claim. Notwithstanding, they are entitled to dismissal of the Sherman Act claim on the merits.

---

on behalf of "the City of Dadeville as an entity" (Doc. No. 40-1 at 16) and in his individual capacity to the extent that he personally participated in the city council proceedings involving Plaintiff's building. (*See* Doc. No. 40-1 at 14 (Plaintiff's allegation that "Council and Mayor voted unanimously to condemn both Plaintiff and his neighbor's property."); Doc. No. 40-2 at 8 (Defendant Goodman's signature on the May 24, 2022 Dadeville City Ordinance declaring Plaintiff's building a nuisance).)

As explained in the February 27, 2024 Recommendation of the Magistrate Judge, which the court adopted, Plaintiff's Sherman Act claims fail because

> Plaintiff has not asserted that the alleged conspiracy between Hidding and other Defendants to force a transfer of ownership of the law office building involves a restraint on interstate commerce or foreign trade, or a violation of an antitrust law... Plaintiff merely emphasizes that a conspiracy is afoot, and appears to argue that the existence of the conspiracy is sufficient to establish a Sherman Act violation. It is not. *See* 15 U.S.C. §§ 1, 2. Accordingly, Plaintiff's Sherman Act claim is due to be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

(Doc. No. 88 at 24-25.) In response to the dispositive motion filed by Defendants Goodman, Caldwell, Goodman-Johnson, Heard, Wolfe, and Greer, which raises arguments essentially identical to those addressed in the February 27, 2024 Recommendation, Plaintiff has not raised any arguments that undermine the reasoning in that Recommendation.

Accordingly, count three of Plaintiff's amended complaint is due to be dismissed without prejudice as to Defendants Goodman, Caldwell, Goodman-Johnson, Heard, Wolfe, and Greer in their official capacities, and with prejudice as to those Defendants in their individual capacities.

D.    § 1983 – Fourth and Fourteenth Amendment – Warrantless Search

In his fourth cause of action, Plaintiff alleges that Defendants' warrantless entries into the law office building constituted an unconstitutional search. (Doc. No. 40-1 at 16-17.) He further alleges that his building was "broken into more than once by City of Dadeville Police and Code Enforcement Officer without warrants," and, on at least one occasion by the "Mayor," *i.e.*, Defendant Goodman. Elsewhere in the amended complaint, Plaintiff alleges that Defendants Floyd and Hunt were the officers who allegedly illegally

entered and searched his building on October 25, 2022. (Doc. No. 40-1 at 6-7 ¶¶ 39, 42.) Accordingly, for purposes of this analysis, the court interprets this claim as being asserted against Defendants Goodman and Floyd.[18]

Plaintiff alleges that Defendants broke into the law office building "more than once," violating constitutional protections against unreasonable warrantless searches and seizures. Plaintiff alleges that, on September 14, 2022, he "allowed Mr. Golden and [an] engineer in the building without a search warrant."[19] (Doc. No. 40-1 at 5-6.) Because the September 14, 2022 entry did not concern any alleged acts or omissions by Defendants Goodman and Floyd personally, any claim against Defendants Goodman and Floyd arising out of that entry could only be reasonably interpreted as being asserted against them in their official capacities only. Any official capacity claims against them, in turn, are due to be dismissed as duplicative of the claims against the City of Dadeville, which have already been dismissed for failure to state a claim upon which relief can be granted.[20] (Doc. No. 91); *Dejarnett*, 976 F. Supp. 2d at 1283.

---

[18] To the extent Plaintiff seeks to assert this claim against the City of Dadeville, Dadeville city code inspector Peter Golden, or the Dadeville Police Department, the claim has already been dismissed. (Doc. No. 91.) Defendant Chance Hunt, a Dadeville police officer who allegedly participated in the search of Plaintiff's building, may also be subject to this count of the complaint, but he did not participate in the filing of the dispositive motions under consideration in this Recommendation. His pending motion to quash service (Doc. No. 80) will be addressed by separate order.

[19] Warrantless entries are *per se* constitutionally reasonable and permissible when valid, free, and voluntary consent is given for the entry by a person with authority to consent. *United States v. Sanchez*, 30 F.4th 1063, 1072 (11th Cir. 2022); *Reeder v. Chitwood*, 595 F. App'x 890, 895 (11th Cir. 2014).

[20] In their dispositive motion, Defendants Floyd and Goodman assert the same arguments that were raised by the City of Dadeville in its dispositive motion, which the court previously granted as to Plaintiff's claims against Defendants City of Dadeville. (Doc. No. 91.)

Plaintiff also alleges that Defendants Floyd and Goodman violated his constitutional rights by illegally entering and searching the building on October 25, 2022, well after the Dadeville City Council hearing and decision to declare the law office building a nuisance. (Doc. No. 40-1 at 6-7, 16.) He asserts that they entered the building with contractors whom the City of Dadeville had employed to inspect and abate the issues with the building. (*Id*.) Again, to the extent that Plaintiff is asserting claims against Defendants Goodman and Floyd in their official capacities that arise out of the October 25, 2022 incident, those claims are due to be dismissed as duplicative of the claims against the City of Dadeville, which, in turn have already been dismissed for failure to state a claim upon which relief can be granted. (Doc. No. 91); *Dejarnett*, 976 F. Supp. 2d at 1283.

With respect to individual capacity claims arising out of the entry to the building on October 25, 2022, Defendants Goodman and Floyd assert the defense of qualified immunity. "Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It is undisputed that the city ordinance in question provides as follows:

> After the council passes the resolution finding the conditions of the property to be a nuisance and ordering its abatement, all employees and duly authorized agents of the city may enter upon private property for that purpose.

(Doc. No. 40-2 at 35.)[21]

It is also undisputed that Defendants Floyd and Goodman are "employees [or] duly authorized agents" of the City of Dadeville. Plaintiff himself alleges that their actions in entering the building were to facilitate inspection by two contractors for the purpose of abating the previously declared nuisance. (Doc. No. 40-1 at 7, 16-17.) Therefore, Defendants Floyd and Goodman were acting in the scope of their discretionary functions by entering the building to facilitate the inspection by the engineers on October 25, 2022.

Further, as explained in the February 27, 2022 Recommendation of the Magistrate Judge (Doc. No. 88 at 25-28), as adopted by the March 26, 2024 Order of the United States District Judge (Doc. No. 91), the warrantless entry into the building on October 25, 2022 was constitutionally permissible. Thus, for purposes of the qualified immunity analysis, in entering Plaintiff's building on October 25, 2022, Defendants Goodman and Floyd were performing a discretionary function in the scope of their employment with the City of Dadeville, and "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sherrod*, 667 F.3d at 1363 (citation and internal quotation marks omitted). Hence, they are entitled to qualified immunity with respect to the fourth count in Plaintiff's amended complaint.

---

[21] In fact, prior to entering the premises, by letter dated August 9, 2022, Dadeville notified Plaintiff that he was in violation of the provision of Dadeville's nuisance abatement ordinance that authorizes Dadeville's employees and duly authorized agents to enter the property to abate the nuisance. (Doc. No. 40-2 at 38.) The letter also required Plaintiff to provide keys to the building within thirty days so that the city's agents could enter to abate the nuisance. (*Id*.) Plaintiff attached a copy of the August 9, 2022 letter to his Amended Complaint. (*Id*.)

Accordingly, the fourth count of Plaintiff's amended complaint for warrantless search and seizure is due to be dismissed without prejudice as to Defendants Floyd and Goodman in their official capacities, and with prejudice as to Defendants Floyd and Goodman in their individual capacities. *Helm v. Liem*, 523 F. App'x 643, 646 (11th Cir. 2013) (finding that the district court "properly dismissed [the plaintiff's] complaint with prejudice based on qualified immunity").

E.     § 1983 – Procedural Due Process: Denial of Right to Be Heard

In the fifth count of his amended complaint, Plaintiff asserts a § 1983 Fourteenth Amendment procedural due process claim in which he contends that he

> has been prevented from voicing his defense in a hearing, has been falsely accused of doing nothing to repair his building contrary to the fact known to the accuser, has not been allowed to rebut witnesses, and was not allowed to give a final argument allowed to City Code Enforcement Officer. Condemnation followed shortly.

(Doc. No. 40-11 at 17.)

Plaintiff alleges that he was given only five minutes to speak at the city council's July 26, 2022 hearing to declare his property a nuisance in violation of city ordinances, and that others were given more time to speak. (*Id*. at 13-14.) He "said most of what he could say in [the] time allowed when he was asked to remain silent." (*Id*. at 14.) In their summary judgment motion, Defendants submitted the minutes of the July 26, 2022 hearing. (Doc. No. 67-1 at 50-54.) Though the council meeting minutes Defendants submitted for some

reason omit the substance of Plaintiff's comments,[22] it is clear (and undisputed) that Plaintiff was recognized to speak.

Plaintiff's procedural due process claim for the denial of the right to be heard cannot reasonably be construed as being asserted against Defendant Floyd, as he is the police chief, and there is no indication that he or the police department were involved in the manner in which the July 26, 2022 hearing was conducted.

Plaintiff's procedural due process claim for the denial of the right to be heard is reasonably construed as being asserted against Defendants Goodman and those Defendants who serve as city council members (Caldwell, Goodman-Johnson, Heard, Wolfe, and Greer). This due process claim is due to be dismissed against them in their official capacities because it is duplicative of the claim against the City of Dadeville, which, in turn has already been dismissed for failure to state a claim upon which relief can be granted. (Doc. No. 91); *Dejarnett*, 976 F. Supp. 2d at 1283.

As to Defendants Goodman, Caldwell, Goodman-Johnson, Heard, Wolfe, and Greer in their individual capacities, this claim arises out of these Defendants' choice of how to conduct a city council meeting (specifically, how much time they allotted to Plaintiff to speak at the July 26, 2022 city council meeting). In making their legislative immunity argument, however, Defendants did not address whether the conduct of city council meetings is a legislative function, either generally or as Defendants conducted the July 26, 2022 proceedings regarding Plaintiff's building. Rather, they addressed legislative

---

[22] Plaintiff's comments begin at the bottom of a page of the council's minutes and clearly are not complete, with the record of his comments ending mid-sentence. (Doc. No. 67-1 at 53.)

immunity as it pertained to enactment of the nuisance ordinance and the vote to adopt Resolution 22-12 condemning Plaintiff's building. Accordingly, they are not entitled to prevail on their legislative immunity argument as to this claim.

Nonetheless, in their individual capacities, they are entitled to prevail on the merits as to this claim. The court previously dismissed this claim as to Defendants City of Dadeville, Golden, and Hidding on its merits. (Doc. No. 91.) In their dispositive motion, Defendants Goodman, Caldwell, Goodman-Johnson, Heard, Wolfe, and Greer assert essentially the same arguments against this due process claim as did Defendants City of Dadeville, Golden, and Hidding. Accordingly, for the reasons the court previously dismissed this claim against Defendants City of Dadeville, Golden, and Hidding on its merits, the court should dismiss with prejudice the claim against Defendants Goodman, Caldwell, Goodman-Johnson, Heard, Wolfe, and Greer in their individual capacities.

F.     Violations of Criminal Statutes

In the sixth and seventh counts of his amended complaint, Plaintiff asserts claims for "Deprivation of Federal Civil Rights" pursuant to 18 U.S.C. §§ 241 and 242. (Doc. No. 40-1 at 17-18.) These statutes criminalize deprivation of civil rights and conspiracy to deprive another of civil rights. "[R]egarding … federal criminal statutes, such as 18 U.S.C. § 242, '[a]bsent some expression of Congressional intent to create a private right of action, a plaintiff cannot maintain a civil claim against a defendant for violation of a federal criminal statute.'" *Johnson v. Reeves*, No. 2:20-cv-379-RAH-JTA, 2020 WL 5648215, at *4 (M.D. Ala. July 17, 2020) (quoting *Johnson v. Champions*, 990 F. Supp. 2d 1226, 1245 (S.D. Ala. 2014)), *report and recommendation adopted*, No. 2:20-cv-379-RAH-JTA, 2020

WL 5648321 (M.D. Ala. Sept. 22, 2020); *see Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1303 (11th Cir. 2008) (rejecting the idea of "a federal private right of action any time a civil plaintiff invokes a federal criminal statute"). Accordingly, the sixth and seventh counts of Plaintiff's complaint are due to be dismissed because they are not cognizable civil causes of action.

## VII.   CONCLUSION

For the reasons set forth above, it is ORDERED as follows:

1.      The Motion to Require Plaintiff to Replead Due Process Claim (Doc. No. 92) filed by Defendants Peter Golden, Mitzy Hidding, and The City of Dadeville is GRANTED.

2.      The Alternative Motion for More Definite Statement (Doc. No. 92) filed by Defendants Peter Golden, Mitzy Hidding, and The City of Dadeville is GRANTED.

3.      **Not later than 28 days[23] following the entry of an Order of the United States District Judge ruling on this Recommendation**, Plaintiff shall file a second amended complaint that meets the following requirements:

---

[23] This deadline is substantially longer than the fourteen to twenty-one days usually allowed a *pro se* plaintiff for amendment. The court provides additional time to account for the many obstacles and vicissitudes that frequently lead Plaintiff to request additional time to comply with deadlines in his pending cases, such as transportation issues, business setbacks, property management concerns, requirements of other ongoing litigation, weather events, financial difficulties, cattle ailments, alleged criminal acts of third parties, lack of competent friends or family to assist him, and health and memory challenges. In other words, the court is already anticipatorily providing Plaintiff an extension of time to file his amended pleading for good cause, as would be required for an extension under Rule 6(b) of the Federal Rules of Civil Procedure. **THEREFORE, NO**

a. The amended complaint shall be **not longer than thirty pages**, double spaced, in 13-point Times New Roman font. All pages shall have margins of at least one inch on top, bottom, and sides. Page numbers are to be located within the bottom margin, but the margins shall otherwise be blank.

b. The second amended complaint shall consist of the following:

i. Plaintiff's § 1983 due process claim based upon Defendants' alleged attempt to take his property by preventing him from repairing the law office building at his own expense. Plaintiff shall **not** assert this claim against any Defendants other than the following: (1) Defendants City of Dadeville, Golden, and Hidding, and (2) Defendants Goodman, Caldwell, Goodman-Johnson, Heard, Wolfe, and Greer, in their individual capacities only.

ii. Plaintiff may include claims against Defendant Chance Hunt that were in his previous amended complaint (Doc. No. 40; Doc. No. 40-1).[24]

**FURTHER EXTENSIONS WILL BE ALLOWED ABSENT COMPELLING, EXTENUATING CIRCUMSTANCES.**

[24] This Order is not to be construed as an implicit ruling on Defendant Hunt's pending Motion to Quash Purported Service (Doc. No. 80) or Plaintiff's Motion to Extend Time for Service of Process on Officer Chance Hunt (Doc. No. 85), which will be addressed by separate order.

iii.      If the United States District Judge's ruling on this Recommendation results in dismissal of fewer claims than recommended, Plaintiff may include any nondismissed claims in his second amended complaint. He may not, however, add any claims that were not in his previous amended complaint (Doc. No. 40; Doc. No. 40-1).

iv.      Plaintiff shall **not** include any other claims or add any new Defendants.

c.      The second amended complaint shall comply with the Federal Rules of Civil Procedure, including Rule 8(a), Rule 8(d), and Rule 10.[25]

d.      The second amended complaint shall not be a shotgun pleading[26] and shall cure any deficiencies pointed out by Defendants in their motions to dismiss.

---

[25] The Federal Rules of Civil Procedure may be found on the court's website at https://www.almd.uscourts.gov/representing-yourself. They may also be found at https://www.almd.uscourts.gov/about/rules-orders-procedures. Although Rule 10 contemplates incorporation by reference, Plaintiff shall **not** incorporate or refer to factual averments, paragraph numbers, etc., in other pleadings or make any adoptions by reference to other filings or pleadings. Plaintiff's second amended complaint shall be a complete statement of his claims without reference to, incorporation of, or adoption of previous pleadings or filings.

[26] The Eleventh Circuit has defined shotgun pleadings as follows:

Though the groupings cannot be too finely drawn, we have identified four rough types or categories of shotgun pleadings. The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and

e.  The second amended complaint shall comply with the Local Rules for the United States District Court for the Middle District of Alabama.[27]

f.  The second amended complaint shall be the full, complete, concise statement of Plaintiff's claims <u>without reference to, adoption of, or incorporation of any previous pleadings or filings</u>. *See* L.R. 15.1. The second amended complaint shall supersede all original or amended complaints previously filed in this case. [28]

g.  The second amended complaint shall set forth a short and plain statement of the grounds for the court's jurisdiction.

h.  To the extent Plaintiff intends to proceed *pro se* on behalf of an estate, he shall include in the second amended complaint <u>concise</u> allegations

---

immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

*Weiland*, 792 F.3d at 1323 (footnotes omitted).

[27] The Local Rules for the United States District Court for the Middle District of Alabama can be found at https://www.almd.uscourts.gov/forms/almd-local-rules.

[28] *See* Healthier Choices Mgmt. Corp. v. Philip Morris USA, Inc., 65 F.4th 667, 676 (Fed. Cir. 2023) (stating that "an amended complaint supersedes the previous complaint," therefore "a district court, in considering an amended complaint, should not consider the now 'abandoned' original complaint and its attachments").

sufficient to allow for the inference that he has the authority to appear *pro se* on behalf of that estate.[29]

i.    The second amended complaint must set out in separately numbered paragraphs a short, plain statement of the facts on which Plaintiff bases his claims. The second amended complaint shall clearly set forth the relevant factual allegations, clearly indicate how the factual allegations support each legal claim, and specify exactly which claim(s) Plaintiff is asserting against which Defendant(s). To the extent possible, for each act of alleged unconstitutional, unlawful, or other wrongful conduct by Defendants, Plaintiff should include the date(s) of the alleged wrongful conduct, a description of the alleged wrongful conduct, the names of the Defendant(s) who allegedly engaged in that conduct, and the facts supporting his contention that wrongful conduct occurred.

j.    The second amended complaint must set out Plaintiff's legal claims in separate counts, with one claim per count, referencing the specific allegations of fact that support each legal claim. "If doing so would promote clarity, each claim founded on a separate transaction or occurrence … must be stated in a separate count." Fed. R. Civ. P.

---

[29] *See Iriele v. Griffin*, 65 F.4th 1280, 1284–85 (11th Cir. 2023) ("hold[ing] that, under the terms of 28 U.S.C. § 1654, an executor may not represent an estate pro se where there are additional beneficiaries, other than the executor, and/or where the estate has outstanding creditors").

10(b). Counts asserted against fewer than all Defendants shall not be asserted against "Defendants" as an entire group. Rather, as to each separate legal claim, Plaintiff shall expressly name which Defendants are allegedly liable to him with respect to that specific claim. With respect to each count, the second amended complaint must clearly and specifically identify each relevant Defendant's alleged acts or omissions in a manner sufficient for each Defendant to know how he or she is alleged to be personally involved with the claim and the factual and legal grounds upon which he or she is alleged to be liable.

k.     The second amended complaint shall state plainly the relief Plaintiff requests from the court.

l.     *Plaintiff is advised that failure to file a second amended complaint in compliance with the requirements of this Order may constitute grounds for dismissal with or without prejudice for failure to prosecute this case and for failure to comply with the court's orders.*

m.     Defendants **shall not answer or otherwise respond** to Plaintiff's second amended complaint until ordered to do so.

Further, it is the RECOMMENDATION OF THE MAGISTRATE JUDGE that

1.     The Motion to Dismiss filed by Defendants Brownie Caldwell, Johnathan Floyd, Frank Goodman, Teneeshia Goodman-Johnson, Darryl Heard, and Tony Wolfe (Doc. No. 65) be GRANTED IN PART AND DENIED IN PART AS FOLLOWS:

a.   The motion to dismiss (Doc. No. 65) be DENIED IN PART as to Plaintiff's § 1983 due process claim against Defendants Brownie Caldwell, Frank Goodman, Teneeshia Goodman-Johnson, Darryl Heard, and Tony Wolfe in their individual capacities on grounds that Defendants are allegedly attempting to take Plaintiff's property by preventing him from repairing the law office building at his own expense.

b.   The motion to dismiss (Doc. No. 65) be GRANTED IN PART as to all other claims against Defendants Brownie Caldwell, Johnathan Floyd, Frank Goodman, Teneeshia Goodman-Johnson, Darryl Heard, and Tony Wolfe.

2.   The Motion for Summary Judgment filed by Defendants Brownie Caldwell, Johnathan Floyd, Frank Goodman, Teneeshia Goodman-Johnson, Darryl Heard, and Tony Wolfe (Doc. No. 65) be DENIED as follows:

a.   The Motion for Summary Judgment (Doc. No. 65) be DENIED as to Plaintiff's § 1983 due process claim against Defendants Brownie Caldwell, Frank Goodman, Teneeshia Goodman-Johnson, Darryl Heard, and Tony Wolfe in their individual capacities on grounds that Defendants are allegedly attempting to take Plaintiff's property by preventing him from repairing the law office building at his own expense.

      b.     In light of the partial granting of the Motion to Dismiss, the Motion for Summary Judgment (Doc. No. 65) be DENIED as MOOT in all other respects.

3.     The Motion to Dismiss filed by Defendant Terry Greer (Doc. No. 68) be GRANTED IN PART AND DENIED IN PART AS FOLLOWS:

      a.     The motion to dismiss (Doc. No. 68) be DENIED IN PART as to Plaintiff's § 1983 due process claim against Defendant Greer in his individual capacity on grounds that he is allegedly attempting to take Plaintiff's property by preventing Plaintiff from repairing the law office building at his own expense.

      b.     The motion to dismiss (Doc. No. 68) be GRANTED IN PART as to all other claims against Defendant Greer.

4.     The Motion for Summary Judgment filed by Defendant Greer (Doc. No. 68) be DENIED as follows:

      a.     The Motion for Summary Judgment (Doc. No. 68) be DENIED as to Plaintiff's § 1983 due process claim on grounds that Defendant Greer, in his individual capacity, is attempting to take Plaintiff's property by preventing him from repairing the law office building at his own expense.

      b.     In light of the partial granting of the Motion to Dismiss, the Motion for Summary Judgment (Doc. No. 68) be DENIED as MOOT in all other respects.

5.     This matter be REFERRED BACK to the undersigned for further proceedings.

The Clerk of the Court is DIRECTED to amend the docket sheet to reflect the correct spelling of Defendant Johnathan Floyd's name

Further, it is ORDERED that the parties shall file any objections to this Recommendation on or before **July 18, 2024**.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Plaintiff is advised that this Recommendation is not a final order of the Court; therefore, it is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1; *see Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

DONE this 3rd day of July, 2024.

_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE